**APPLIED MEASUREMENT PROFESSIONALS, INC.,**
Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2004.

Decided March 11, 2004.

---

Brian N. Woolley, Kansas City, MO, for petitioner.

Paul R. Jordan, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Applied Measurement Professionals, Inc. (AMP) petitions for review of an order of the Unemployment Compensation Board of Review (Board) finding Irene T. Zuba (Claimant) eligible for unemployment compensation benefits. In doing so, the Board affirmed the decision of the Referee that Claimant was not an independent contractor but, rather, an employee of AMP.

On June 1, 2001, Claimant applied for temporary extended compensation benefits with the Erie Unemployment Compensation Service Center (Service Center).[1] On

---

1. The record shows that in January 2002, Claimant was determined ineligible for benefits. Certified Record, Claim Record at 5. The record also shows that on October 5, 2001, June 17, 2002 and July 31, 2002, AMP sent correspondence to the Service Center asserting that Claimant "knew from the beginning that she was an independent contrac-

her application, Claimant listed AMP as one of her separating employers for which she had performed services. In response to the Service Center's request for separation and wage information, AMP stated that Claimant was not an employee but a self-employed independent contractor.

By decision mailed August 13, 2002, the Service Center determined that Claimant was not self-employed within the meaning of Section 402(h) of the Unemployment Compensation Law,[2] and it granted benefits. AMP appealed the Service Center's determination,[3] asserting that Claimant was a self-employed, independent contractor. At issue were claim weeks ending June 22, 2002 through August 3, 2002. A Referee conducted a hearing at which only AMP appeared and presented evidence; Claimant did not participate.

The Referee found the following facts to be relevant.[4] Claimant was employed by Gannon University from September 19, 1981 through June 19, 2001. On August 28 and 31, 2001, Claimant performed services as an exam proctor for one of AMP's clients, for which she was compensated in the amount of $404.74.[5] Claimant received no training from AMP regarding proctoring, and there was no representative of AMP present when Claimant proctored the exams in question. AMP neither supervised her job performance nor provided her with supplies. Claimant was not paid on an hourly basis, but, rather, by the job. AMP's compensation to Claimant was reported to the IRS on a 1099 form rather than a W–2 form, and it provided her no benefits other than the compensation of $404.74.

AMP presented evidence about its business at the hearing.[6] AMP develops and administers license and certification examinations for clients, generally state agencies and professional organizations. The examinations are given at a date, time and place chosen by AMP's client. AMP conducts exams in Erie, Pennsylvania, where Claimant resides, approximately 10 days per year.[7] To conduct these examinations,

tor." Certified Record, Claim Record at 6, 7 and 8. It is not clear what prompted the Service Center's initial determination to be revisited.

**2.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h). Section 402(h) of the Law provides that an employee shall be ineligible for compensation for any week in which he or she is engaged in self-employment.

**3.** AMP appealed the Service Center's determination even though AMP was not charged for the unemployment compensation benefits received by Claimant. AMP brought this appeal, presumably, out of concern that the finding that Claimant was an employee would have other consequences for its business. It would have the potential to create liability for workers' compensation, unemployment compensation, and vicarious liability for the tortious acts of Claimant and others similarly situated.

**4.** Upon review of the record and the evidence submitted at the Referee's hearing, the Board affirmed the referee's decision without making any independent findings of fact.

**5.** The record, we note, does not support this finding. The unrebutted testimony of AMP showed that Claimant did proctoring on August 28 and 29, 2001 on August 27 and 28, 2002. The daily honorarium was $101.00. Reproduced Record 5a (R.R. ——). However, the correct number of days Claimant proctored for AMP is not material.

**6.** To be sure, the Referee made no findings about AMP's business. The Referee limited its findings to those necessary to support its decision. Once the Referee found Claimant to be an employee, the facts about AMP's business were not relevant. They are relevant here where we consider whether AMP met its burden of proof.

**7.** AMP does not maintain an office in Erie, and none of AMP's witnesses had ever met Claimant. AMP does not know who will be proctoring an exam prior to the test date.

AMP contracts with a test supervisor, who then selects the proctors to monitor an examination. Claimant was a proctor at an AMP examination for two days in August of 2001 and for two days in August of 2002.

Proctors, such as Claimant, are free to work for any testing company, and in AMP's experience, proctors generally do work for more than one company. A proctor works only when he or she so chooses and may turn down an assignment without any negative consequence. An individual who proctors an AMP examination is given no priority to proctor other examinations. On her application for benefits, Claimant stated that she proctored an examination for AMP on May 9, 2002. However, the Referee credited AMP's evidence that she did not proctor for AMP in May 2002.

At the conclusion of the hearing, the Referee held that Claimant was an AMP employee, and AMP appealed to the Board. The Board affirmed the Referee. It concluded that AMP proved that Claimant proctored examinations for AMP free from its control and direction but that AMP did not prove that Claimant was customarily engaged in an independently established trade, occupation, profession or business. Therefore, the Board held that Claimant was an employee of AMP eligible for unemployment compensation benefits. This appeal by Employer followed.

■ The issue before this Court is whether Claimant was an employee of AMP or was engaged in self-employment. Whether Claimant was an employee or an independent contractor is a determination of law subject to our review. *D.K. Abbey Marketing, Inc. v. Unemployment Compensation Board of Review*, 165 Pa. Cmwlth. 292, 645 A.2d 339 (1994). Section 401 of the Law provides that "[c]ompensation shall be payable to any employe who is or becomes unemployed...." 43 P.S.

§ 801. To guide the determination of whether an individual is an "employe," Section 4($l$)(2)(B) of the Law provides that:

> *Services performed by an individual for wages shall be deemed to be employment* subject to this act, *unless* and until it is shown to the satisfaction of the department that ——(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753($l$)(2)(B) (emphasis added). This provision presumes that one who performs services for wages is an employee and not an independent contractor. However, it allows this presumption to be overcome where the putative employer shows that the services were performed free of the employer's control and that the services are the type performed in an independent trade. In sum, the purpose of Section 4($l$)(2)(B) of the Law is to exclude independent contractors from coverage. *Krum v. Unemployment Compensation Board of Review*, 689 A.2d 330 (Pa. Cmwlth.1997).

■ Because the Board held that AMP demonstrated that Claimant's proctoring services were performed free of AMP's control or direction, AMP satisfied the first part of the conjunctive test established in Section 4($l$)(2)(B) of the Law. The only issue, then, is whether Claimant was customarily engaged in an independent trade or business, which is the second part of the statutory test.

■ This Court has established factors for evaluating the second part of the con-

junctive test in Section 4(*l*)(2)(B) of the Law. They are

> whether the individual held himself out or was capable of performing the particular activities in question for anyone who wished to avail himself of such services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services.

*Jochynek v. Unemployment Compensation Board of Review,* 32 Pa.Cmwlth. 86, 378 A.2d 490, 492 (1977).[8] The Board argues that the evidence presented by AMP was inadequate on these factors. Specifically, the Board argues that it was incumbent upon AMP to prove that AMP had a competitor in Erie that also administered licensing examinations for clients. We disagree.

First, ample evidence was presented by AMP on the factor of whether Claimant was capable of proctoring examinations for anyone. AMP did not bind its proctors to an exclusivity requirement. A proctor is free to accept or reject an assignment from AMP without consequence and, indeed, is given no priority for assignments by virtue of having an AMP proctoring history. The record suggests that, in fact, Claimant actually did accept proctoring assignments from sources other than AMP. On her application for benefits, Claimant asserted that she proctored for AMP on May 9, 2002; however, AMP presented evidence found credible by Referee that it did not conduct any examinations in Pennsylvania on that date. It is reasonable to

infer, therefore, that Claimant was proctoring in May 2002 for another service, which she mistakenly identified as AMP.[9]

Second, AMP's evidence, which was not rebutted, was adequate to demonstrate that the nature of proctoring is such that a proctor is not compelled to look to a single employer in order to perform proctoring services. It showed that there are over 40 testing companies, both national and regional, that provide testing services similar to those offered by AMP. The Board counters, however, that AMP is the only testing company in Erie. This is a flawed argument because AMP is not "in Erie." It conducts examinations in a hotel and it does not maintain an office in Erie. Indeed, it conducts examinations on only 10 days per year in Erie. Further, the Referee never made a finding that AMP is the only testing service in Erie; accordingly, the Board's argument lacks a factual foundation in the record. More to the point is the fact that Claimant could not rely solely upon AMP for employment. Assuming she proctored every exam administered by AMP in Erie, at the rate of $101.00 per day of proctoring, Claimant would earn little more than $1,000 *per annum.* Far from being compelled to look only to AMP for a living wage, Claimant was compelled to look to many sources to make a living wage from proctoring.

In short, we hold that AMP met its burden of proving that Claimant was not its employee but, rather, an independent contractor. We reverse the Board's holding to the contrary.[10]

---

8. *See also, Monroe G. Koggan Associates, Inc. v. Unemployment Compensation Board of Review,* 80 Pa.Cmwlth. 626, 472 A.2d 277 (1984); *Attorneys on Call v. Unemployment Compensation Board of Review,* 155 Pa. Cmwlth. 96, 624 A.2d 754 (1993).

9. However, whether Claimant did or did not proctor an examination for another examina-

tion company is not dispositive of this issue before us.

10. Section 402(h) of the Law states as follows:

> An employee shall be ineligible for compensation for any week—
> * * *

For these reasons, we reverse the Board.

**ORDER**

AND NOW, this 11th day of March, 2004, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.

(h) In which he is engaged in self-employment: Provided, however, *That an employe who is able* and available *for full-time work shall be deemed not engaged in self-employment* by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work *when such activity is not engaged in as a primary source of livelihood.* Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. § 802(h)(emphasis added). Thus, self-employed persons may be eligible for benefits where the claimant is engaged in a "side-line activity" that is not the primary source of livelihood. AMP notes in its Brief that Claimant may be eligible for benefits by treating proctoring as a side-line activity under Section 402(h) of the Law; however, this issue has not been preserved. It was not raised by AMP in its petition for review or statement of questions presented. Further, the Board opposed this theory in its Brief.