**C E CREDITS ONLINE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 30, 2007.

Decided April 24, 2008.

---

Kathy Speaker MacNett, Harrisburg, for petitioner.

Paul R. Jordan, Harrisburg, for respondent.

Michael J. Quirk, Philadelphia, for intervenor, C. Spyridakis.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

C E Credits OnLine (CEC) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) granting unemployment compensation benefits to Catherine Spyridakis (Claimant). The Board, as did the Referee, rejected CEC's argument that Claimant was a self-employed independent contractor ineligible for benefits. Although the Board found that Claimant's work for CEC was done in her capacity as proprietor of an independent trade or business, it also found that Claimant was not free of CEC's control. In this case, we consider whether CEC's control over Claimant's final work product, *i.e.*, demanding that it be free of grammatical and syntaxical error, is the type of control that can be exercised only in an employer-employee relationship.

The essential facts are not in dispute. CEC is a company located in the State of Washington that offers nationwide a variety of professional development courses on the internet. In Pennsylvania, for example, it offers continuing education courses to Pennsylvania certified teachers. CEC's on-line courses have been accredited by several universities. Students who take CEC's courses post their work on-line for review by CEC's "moderators," who determine whether the students have answered the topic questions in a way that demonstrates "that the underlying concepts taught in the course ... are fully comprehended by the students." Reproduced Record at 80a (R.R. ——). Moderators are "not teachers." Notes of Testimony, January 29, 2007, at 24 (N.T. ——); R.R. 507.

Claimant, who holds a Master of Sciences degree in adult education, began moderating courses for CEC in 2004. Claimant also does this type of work for other on-line educational institutions, including Nexus Learning, Brainfuse and the University of Phoenix, and she did so during the time she worked for CEC. Claimant earned $741.25 in 2004 and $3,851.25 in 2005 working for CEC. For each tax year, CEC issued Claimant an IRS Form 1099 and did not withhold for state or federal income taxes, Social Security or Medicare.

Claimant stopped working as a CEC moderator in August 2006 and applied for unemployment compensation benefits. The Scranton UC Service Center granted benefits, and CEC appealed, asserting that Claimant was ineligible because she was not an employee of CEC but, rather, a self-employed independent contractor. Self-employed persons are ineligible for benefits under Section 402(h) of the Unemployment Compensation Law (Law).[1]

Two hearings were held before a Referee. At the first hearing, the Referee admitted over 300 pages of documents offered by Claimant over the objections of Employer. At the second hearing, testimony was heard from Gail Hixon, owner,

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(h); it states, in relevant part, as follows:

> An employe shall be ineligible for compensation [if] engaged in self-employment.

president and CEO of CEC; Claimant; and a representative of the Department of Labor and Industry.[2]

One of the key pieces of evidence was Claimant's written agreement with CEC. It provided, in relevant part, as follows:

1. *CEC hereby engages [Claimant] as an independent contractor, and [Claimant] accepts such engagement.* [Claimant] is an independent contractor willing to provide certain skills and abilities to CEC that CEC has the need for, namely moderating services for CEC. Moderating entails responding to online students forum postings using an answer guide provided by CEC.

\* \* \*

7. [Claimant] is an independent contractor and may engage in other business activities. As an independent contractor to CEC, neither party shall have any authority to bind the other in any way outside of this agreement. [Claimant] shall act as an Independent Consultant and not as an agent or employee of CEC and [Claimant] shall make no representation as an agent or employee of CEC.

8. *In her capacity as an independent contractor, CEC agrees that [Claimant] has the sole right to control and direct the means, manner and method by which the services required by this agreement will be performed* and CEC shall not withhold from [Claimant] any information or material that may otherwise have an impact on the work.

R.R. 77a–78a (emphasis added). The agreement provided that CEC would pay Claimant $15.00 an hour on the 15th and last day of each month in which Claimant submitted an invoice. The agreement did not provide Claimant any health insurance, life insurance or pension benefits.

Pursuant to her agreement with CEC, Claimant worked for CEC four to five hours per week, depending on the flow of assignments, any one of which she was free to accept or reject. Claimant did this work from her home using her own computer.

In her testimony, Ms. Hixon discussed the work and duties of moderators, who review the homework assignments of CEC students and comment on their work. Ms. Hixon explained that moderators "need only to approve whether or not all of the points [to the questions] were met." N.T. 24; R.R. 507a. Moderators do not act as coaches and do not operate in real time; students having difficulties with a course are referred to a lead moderator.

CEC provides moderators with certain materials. The Forum Reply Policies explain how a moderator is to navigate the company website. The Forum Reply Policies state, *inter alia*, that moderators are expected to use correct grammar, syntax and spelling and to express themselves in a cordial and professional manner in their comments on student work.[3] Ms. Hixon explained that this was important because the CEC "postings" of moderators may be accessed by potential clients as well as by students. CEC also provides moderators with "rubrics."[4] The rubrics consist of

2. The Department seeks unemployment taxes from CEC based on Claimant's wages.

3. In addition to directing moderators to avoid contractions, internet jargon or abbreviations, the Forum Reply Policies state that moderators should avoid offering political opinions, personal preferences and other comments not directly related to the topic questions.

4. CEC's witness, Ms. Hixon, explained that a rubric is "a guide that shows what a correct answer would be," and it is used by moderators to determine whether the students have answered the questions. N.T. 33; R.R. 516a. It also provides suggested moderator comments.

sample answers posted by students and appropriate sample moderator responses.

Because of the volume of student and moderator postings on-line, CEC does not review the work of moderators on a day-to-day basis. Unless a student complains, CEC does not review the response of a moderator on a particular assignment. CEC uses a lead moderator to distribute assignments to moderators and to respond to any problems or questions presented by a moderator. Moderators report to the lead moderator once they have completed an assignment or when they decline an assignment. There are no negative consequences for the moderator who decides to decline a particular assignment. However, if the moderator accepts an assignment, she must complete the job within 24 hours.

Moderators must successfully complete a CEC course to qualify for the position. Claimant passed the course entitled "Stopping Disruptive Behavior" before she was hired to moderate that course. By taking other CEC online courses, Claimant then became eligible to moderate six different courses. Claimant was issued the above-described written materials relevant to moderating CEC student work, but she did not undergo any formal training. Claimant did not, and was not expected to, attend meetings in connection with her moderating services for CEC. As with all moderators, Claimant did not receive a performance evaluation; a guarantee for certain level of annual compensation; or a guarantee that she would receive a minimum number of posting assignments.

The Referee affirmed the decision of the UC Service Center. CEC appealed, and the Board affirmed the Referee in an adjudication with 56 factual findings and two legal conclusions.[5] First, the Board concluded that the moderating services provided by Claimant for CEC were done in her capacity as the sole proprietor of an

---

For example, a rubric for the course entitled "Coaching to Improve Teaching and Learning," Lesson 1.a, provides sample "acceptable answers" from students and sample moderator "replies to acceptable answers." One sample acceptable answer states:

> I want to know how to keep the coaching conferences positive instead of having it turn into a them [vs.] me situation. How do I build trust in the coaching relationship? How do I get my coaching partner to see what he can improve on?

The sample moderator "reply" to this "acceptable answer" states:

> Very good. The techniques taught in this course should be able to help you with these questions. Thank you for your post. R.R. 84a.

5. The point of many of the factual findings is obscure. For example, the Board found as follows:

> 30. The claimant answered CEC's job posting on JobCenter@teachers.net for a "part-time online TA."
> * * *
> 42. In a July 2005 e-mail, the claimant and other moderators were admonished for not complying with the 24–hour re-quirement, and they were also admonished for spelling and grammatical mistakes in their posted replies which caused "amazing damage" to CEC's public image.
> * * *
> 50. The claimant was directed to send an e-mail to a lead moderator at the end of every day that she worked, indicating the status of the postings she worked on.
> 51. The claimant always strictly adhered to the CEC-provided course rubric when moderating and believed that CEC required her to do so.
> 52. In June 2006, moderators including the claimant received an e-mail from CEC pertaining to the bi-monthly invoicing.

Board Opinion, June 8, 2007, at 3–5. One assumes that these findings were intended to show CEC's control over Claimant, but in its discussion the Board does not explain why. It simply states in conclusory fashion that CEC did not prove that Claimant was free of its direction and control.

independent trade or business. Second, the Board concluded that because Claimant was not free of CEC's direction and control over the quality of her postings, Claimant was an employee of CEC. As such, Claimant was held eligible for benefits under Section 4(*l*) (2)(B) of the Law, 43 P.S. § 753(*l*)(2)(B).[6]

CEC then petitioned for this Court's review of the Board's adjudication.[7] The principal issue raised by CEC is whether Claimant was its employee. CEC presents two arguments in support of its contention that Claimant was an independent contractor and ineligible for unemployment compensation. First, it argues that the evidence established that Claimant, not CEC, had sole control over the manner, methods and means of performing her moderating duties, thereby making her an independent contractor. Second, it contends that the Board's conclusions are internally inconsistent. Because Claimant was found by the Board to be engaged in an independent trade or business, she could not also be performing those services as a CEC employee.[8] The second issue raised by CEC is that the Board erred in admitting many of Claimant's documents because they were hearsay and in some cases altered.

■■■ Whether an individual performs services as an independent contractor or

as an employee is governed by Section 4(*l*)(2)(B) of the Law. It states as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be *free from control or direction* over the performance of such services *both under his contract of service and in fact;* and (b) as to *such services such individual is customarily engaged in an independently established trade*, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B) (emphasis added). Thus, where the claimant's services are performed free of the employer's control *and* the claimant's services are the type performed in an independent trade or business, the claimant is not in an employment relationship. The employer asserting that the claimant is not eligible by reason of Section 4(*l*)(2)(B) of the Law bears the burden of proof. *Urban Redevelopment Authority of Pittsburgh v. Unemployment Compensation Board of Review*, 142 Pa.Cmwlth. 20, 596 A.2d 1209, 1211 (1991).

In this case, CEC proved to the satisfaction of the Board that Claimant's services were done in connection with her indepen-

---

6. The text of Section (4)(*l*)(2)(B) of the Law is set forth *infra.*

7. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *Krum v. Unemployment Compensation Board of Review*, 689 A.2d 330, 331 (Pa. Cmwlth.1997). Whether an individual is an employee or an independent contractor is a determination of law subject to our review. *Applied Measurement Professionals, Inc. v. Unemployment Compensation Board of Review*, 844 A.2d 632, 635 (Pa.Cmwlth.2004).

8. We have not been able to find a single case where, as here, the Board found that the claimant was providing services typically provided by an independent contractor but was an employee because employer exercised control in the form of quality standards over the work product. More typical is the case where the Board finds an absence of control over the claimant but cannot find the claimant's services that of an independent trade or occupation. *See, e.g., Applied Measurement Professionals, Inc.,* 844 A.2d at 635. Where that second test is not satisfied, the claimant will be found to be an employee, not an independent contractor.

dently established business or profession. Indeed, Claimant provided similar services for several on-line universities. CEC also proved that Claimant was free of CEC's control, at least by reason of her "contract of services" with CEC. Section 4(*l*)(2)(B) of the Law, 43 P.S. § 753(*l*)(2)(B). In that contract, Claimant agreed that she was engaged "as an independent contractor" with "the sole right to control and direct the means, manner and method by which services required by this agreement will be performed." R.R. 77a–78a. The only question, then, is whether CEC also proved that Claimant's services were "in fact," and not just as a matter of contract, free from control. Section 4(*l*)(2)(B) of the Law, 43 P.S. § 753(*l*)(2)(B).

■ This Court has identified a number of factors relevant to whether an employee is free of "control" for purposes of Section 4(*l* )(2)(B). They include: whether there is a fixed rate of remuneration; whether taxes are withheld from the claimant's pay; whether the employer supplies the tools necessary to carry out the services; whether the employer provides on-the-job training; and whether the employer holds regular meetings that the claimant was expected to attend. *Pavalonis v. Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 289, 426 A.2d 215, 217 (1981). No one factor is dispositive of the ultimate question of whether the putative employer "controls" the work to be done and the manner in which it is done.

■ Application of these factors here generally supports the conclusion that Claimant "in fact" was not an employee of CEC. She received no employee benefits or on-the-job training; taxes were not withheld from her pay; she supplied the tool, *i.e.,* a computer, used to perform the moderating job; and she was not expected to attend, and did not attend, any regular meetings. The only *Pavalonis* factor that

cuts in favor of "control" is Claimant's fixed rate of remuneration, which was $15 per hour. However, this factor standing alone does not make Claimant an employee, as opposed to an independent contractor.

First, this Court has explained that the entire employment relationship must be examined in determining whether it is an employment relationship. *Beacon Flag Car Co., Inc. (Doris Weyant) v. Unemployment Compensation Board of Review,* 910 A.2d 103, 108 (Pa.Cmwlth.2006) (holding that a non-compete clause did not render the person agreeing to the term an employee where other factors "weighed in favor of finding an absence of control.") Thus, Claimant's fixed hourly rate of payment, as one of many factors, is not dispositive.

■ Second, the compensation factor involves more than an inquiry into how it is computed. Where the claimant is paid on presentation of invoices after completion of a job and without withholding for taxes, the claimant is considered to be self-employed. *Pavalonis,* 426 A.2d at 217. Here, Claimant is paid upon presenting an invoice after completing one or several moderating job assignments over the course of two weeks. Employees, by contrast, are paid for reporting to the workplace during scheduled hours, regardless of whether there is actually work to do on any particular day. Further, many independent contractors use a fixed rate of compensation. In a "cost plus" construction contract, the general contractor is not paid a fixed price for the project but, rather, is paid according to costs incurred for each hour of labor provided and each item of material used. Attorneys also bill their clients at a fixed hourly rate, but no one would seriously argue that an attorney discharged by his client is entitled to unemployment compensation.

■ CEC imposes deadlines and performance standards upon its moderators. They are expected to issue cordial, professional responses that employ correct spellings, syntax and generally adhere to the rules of grammar. They must complete each job within 24 hours. Precedent teaches, however, that deadlines and quality standards do not an employment relationship make. In *Venango Newspapers v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 379, 631 A.2d 1384 (1993), this Court held that newspaper carriers were not employees of the newspaper but, rather, independent contractors. Using the *Pavalonis* criteria, we found a lack of control because the carriers used their own vehicles, were not formally trained and were free of direct, day-to-day supervision. As here, the carriers were expected to meet deadlines. They had to pick up their newspapers by 12:30 a.m. and deliver them by 6:30 a.m. They were also expected to do their jobs in a "prompt" and "dependable" way. *Venango Newspapers*, 631 A.2d at 1386.

Central to the holding of *Venango Newspapers* was the absence of day-to-day supervision. That is the case here. Claimant retained unfettered discretion over whether to accept work from CEC and, if she did accept, over when in the course of the 24–hour deadline to enter her responses. Claimant could do the job from her home or from a coffee shop. Indeed, she had more control over the manner in which she did her job than did the newspaper carriers in *Venango Newspapers*.

■ This brings us to the heart of the issue of "control." Although the Board's analysis is less than pellucid, it is fixed on the fact that CEC expected good grammar, did occasional spelling checks of responses and expected responses to be consistent with CEC's rubrics.[9] The Board fails to appreciate the difference between control of a work product and control over the time, place and manner of performance. As this Court explained in *J. Miller Co. v. Mixter*, 2 Pa.Cmwlth. 229, 277 A.2d 867, 871 (1971), "control of the result only and not of the means of accomplishment" did not transform an independent contractor relationship into an employer-employee relationship.[10] Every job, whether performed by an employee or by an independent contractor, has parameters and expectations.[11] "Control" for purposes of Section 4(*l*)(2)(B) of the Law is not a matter of approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment.

On balance, considering all the relevant factors, we hold that Claimant was engaged by CEC as an independent contrac-

---

9. In its employer questionnaire, CEC stated that it expected moderators to conform to the rubrics and Forum Reply Policies. R.R. 71a. It also indicated that it periodically spot-checked moderator responses for spelling and grammar errors. *Id.* Whether a moderator copied the rubrics word-for-word or crafted her own responses does not matter. Employment status is not a function of the complexity of the job or the degree of discretion over the work product. A rote job, such as delivering newspapers, can be that of an independent contractor as this Court found in *Venango Newspapers*. The president of a Fortune 500 company exercises significant discretion but is an employee, not an independent contractor.

10. Although *J. Miller Co.* is a workers' compensation case, the inquiry was the same, *i.e.*, whether the claimant was an employee or independent contractor. In deciding this question in the workers' compensation context, control over the services provided by the claimant is also a critical factor.

11. Clients expect to exercise approval authority over their attorney's work product, whether a brief or a contract. This does not transform the client into the attorney's employer.

tor. She executed a written contract in which she agreed to accept the engagement as an independent contractor, and such written agreements are significant to the determination of whether a claimant is an employee or independent contractor. *See, e.g., Beacon Flag Car Co.,* 910 A.2d 103; *Attorneys on Call v. Unemployment Compensation Board of Review,* 155 Pa. Cmwlth. 96, 624 A.2d 754 (1993). In addition, the "facts" of Claimant's engagement were consistent with the terms of the contract. Claimant decided when to work, whether to work, provided the tools necessary to do the job, received no formal training, attended no meetings and did not have taxes withheld from her compensation. Claimant was free of CEC's control over if and when to deliver the work product expected by CEC. Claimant was employed as an independent contractor, not an employee, and the Board erred in holding otherwise.

For these reasons, the decision of the Board is reversed.

Judge SMITH–RIBNER concurs in the result only.

### ORDER

AND NOW, this 24th day of April, 2008, the order of the Unemployment Compensation Board of Review dated June 8, 2007, in the above-captioned matter is hereby REVERSED.