**THOMAS EDISON STATE COLLEGE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 24, 2009.

Decided Aug. 26, 2009.

and the desire to protect agricultural land. 3 P.S. § 902.

Henry E. Van Blunk, Yardley, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel and Gerard M. Mackarevich, Harrisburg, for respondent.

Michelle J. Vanderhoof, intervenor, pro se.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Thomas Edison State College (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming the order of the referee granting benefits to Michelle Vanderhoof (Claimant). We now reverse.

Claimant applied for unemployment compensation benefits on January 10,

2008.[1] On June 9, 2008, the Altoona Unemployment Compensation Service Center (Service Center) mailed a notice of financial determination to Claimant indicating that she was financially eligible for unemployment compensation benefits in the amount of $462.00 per week. The Service Center's determination did not include any earnings from Employer in its calculation of benefits. Subsequently, on June 24, 2008, Claimant filed an appeal claiming that the determination was missing the earnings that she had received from Employer and that consideration of those earnings was necessary in order to complete her base year earnings report. A hearing before the referee was scheduled and held on July 29, 2008.

At the hearing before the referee, Claimant testified on her own behalf. Christopher Stringer, Employer's Controller, and Heather Brooks, Employer's Associate Director for Human Resources, testified on behalf of Employer. Claimant testified that she began working for Employer in 2006 as an online mentor and mentored students in English composition that were assigned to her by Employer. Claimant testified that, pursuant to contract, she was paid by Employer on a per student basis and that at the end of each semester she could receive a bonus payment for each student if she submitted the student's grade by a certain deadline.

Mr. Stringer testified that Employer contracted with Claimant on a yearly basis which gave Employer the ability to use her services as a mentor, but that there was no guarantee that Claimant would be assigned any students. Mr. Stringer testi-

fied that Claimant's service was not like that of a "professor" teaching the class, but that she was instead considered to be one of many "off-site facilitators of the class." (N.T. at 10, July 29, 2008, R.R. at 23a). Mr. Stringer testified that Claimant initially received a per student rate depending on the number of students who registered for the course and that Claimant would receive an additional per student payment at the end of the course for each student who completed the course. Mr. Stringer testified that Claimant could also receive a smaller amount of remuneration, per student, if she submitted each student's final grade in a timely fashion.

Ms. Brooks testified that Claimant signed a contract with Employer that indicated that she was an independent contractor. Ms. Brooks testified that mentors were "handled differently than employees in that they [did] not come through the office of human resources." (N.T. at 14, July 29, 2008, R.R. at 27a).

By decision with a mailing date of August 4, 2008, the referee determined that the wages that Employer had paid to Claimant were to be included in the calculation of her unemployment compensation benefit as he concluded that the services that Claimant provided for Employer constituted "employment" pursuant to Section 402(e) of the Pennsylvania Unemployment Compensation Law (the Law).[2] The referee noted that although Claimant had signed a contract designating her services as those of an independent contractor, such language was not dispositive of the matter and that because Employer exerted

---

1. Claimant filed for benefits following her separation from Huntington Learning Center where she had been employed as a full-time Director. During the time Claimant worked for Huntington Learning Center, she was also employed by Widener University, Rowan University and Employer.

2. Act of December 5, 1936, Second Executive Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

control over Claimant's services the actual relationship was that of an employer/employee. The referee noted that Claimant was free to provide her services to other educational institutions and did in fact do so. Further, the referee concluded that Claimant's position was similar to that of an adjunct professor although she was not responsible for instructing or teaching the students. Thus, the referee modified the financial determination to include the wages that Employer paid Claimant, and increased Claimant's weekly unemployment compensation benefit amount to $520.00.

By letter dated August 15, 2008, Employer appealed the referee's decision to the Board. Employer alleged that the referee erred in including its wages paid to Claimant because she was an independent contractor and her services were not similar to that of an adjunct professor. Employer asserted that Claimant was not an employee as she had never completed an employment application, had not been contacted through a recruitment process, was not eligible for fringe benefits and Employer had never made any payroll deductions from Claimant's check. Employer alleged that any "control" it exerted over Claimant was minimal in contrast to all of the "independent" activities performed by Claimant over which she had complete control. (R.R. at 101a). Additionally, Employer noted that Claimant was able to offer her services to other members of the public, was not required to teach or lecture any students, was not trained or supervised by Employer, did not report to work on Employer's premises, did not have any set work hours and was not required to provide written reports to Employer other than the optional submission of final grades.

By order dated September 16, 2008, the Board remanded the matter to the referee for the purpose of establishing additional testimony and evidence. By notice of hearing with a mailing date of September 23, 2008, the referee scheduled a hearing for October 7, 2008. The notice indicated that the specific issues to be considered were whether Claimant had performed services in an instructional, research, or principal administrative capacity and had a reasonable assurance of returning at the beginning of the next academic term; whether Claimant was unemployed as defined by the Law; whether Claimant's services had been performed in covered employment and whether Claimant's wages were in excess of six times her weekly benefit rate.

At the remand hearing before the referee, Claimant testified on her own behalf. Mr. Stringer and Ms. Brooks testified on Employer's behalf. Claimant testified that she was an experienced secondary instructor in the classroom, had a master's degree in English and was an experienced online instructor. Claimant testified that she had received a handbook of "mentorship standards" from Employer which indicated that she was required to grade papers within a one week period and monitor student discussions several times a week. (N.T., October 7, 2008, at 5, R.R. at 122a). Claimant testified that Employer provided her with a textbook for each class. Claimant testified that she did not have to report to Employer as to how often she answered student questions or how many times she monitored student discussions but that she did have to timely submit the student grades to Employer at the end of each semester.

As to specifics about Employer, Mr. Stringer testified that Employer was an accredited educational institution but that it did not have "traditional" students on campus as all of its offered classes were either "guided study" or "online." (N.T.,

October 7, 2008, at 8, R.R. at 124a). Mr. Stringer stated that Employer offered twelve semesters per year which started "roughly on the first day of each month" and lasted approximately twelve or sixteen weeks. *Id.* Mr. Stringer indicated that Employer was "open" 365 days a year. *Id.*

With regard to Employer's relationship with Claimant, Mr. Stringer testified that it provided Claimant with access to "Blackboard," an internet web portal, in order for her to monitor student discussions. (N.T., October 7, 2008, at 4, R.R. at 121a). Mr. Stringer testified that Employer did not provide Claimant with a textbook but merely passed it along to her from the publisher. Mr. Stringer testified that Employer did not supply Claimant with a computer or other tools and did not require mentors to have teaching experience. Mr. Stringer indicated that Employer did not monitor the mentor discussions with students or supervise such activities on a day-to-day basis and merely waited for the mentor to provide each student's final grade at the end of each class. Mr. Stringer testified that Claimant was never guaranteed to be selected as a mentor for any future semesters and was never guaranteed a certain number of students per semester. Finally, Mr. Stringer testified that Claimant received a flat rate of $172.00 per student plus an additional $17 per student if Claimant submitted the student's grade on time.

By order mailed on November 13, 2008, the Board affirmed the referee's determination as it found that Claimant was an employee as she was subject to the control and direction of Employer in the performance of her work. The Board found that a mentor had "many duties similar to profes-

sors" and was "responsible to help students learn the materials." (R.R. at 214a). The Board found that Employer controlled the terms of the agreement "including the compensation and all work deadlines." *Id.* The Board noted that Claimant was given a handbook and was "required to follow all of the requirements in the 16 page handbook." (R.R. at 215a). The Board found that Claimant had a supervisor and was required to check the website two to three times a week. Thus, the Board concluded that Claimant was not ineligible for unemployment compensation benefits pursuant to Section 4(*l* )(2)(B) of the Law, 43 P.S. § 753(*l* )(2)(B).

On appeal,[3] Employer argues that the Board erred in finding that Claimant was an employee under the Law. Employer argues that the Board disregarded substantial competent evidence that Claimant was an independent contractor as provided by the explicit wording of the contract and the fact that it issued her an IRS Form 1099 and did not deduct any payroll taxes from her compensation. In its reply brief, Employer argues that the Board did not meaningfully consider the factors identified by this Court in *CE Credits OnLine v. Unemployment Compensation Board of Review,* 946 A.2d 1162 (Pa.Cmwlth.2008), *petition for allowance of appeal denied,* 971 A.2d 493 (2009). Finally, Employer argues that the Board's reliance on its supplying Claimant with a handbook as evidence of its control is erroneous. Employer asserts that a review of the handbook reveals that it is not an employee handbook but rather a "general guide which addresses [Employer's] educational culture, the non-traditional nature of many of its students, expectations of Mentor's

---

**3.** Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *Krum v. Unemployment Compensation Board of Review,* 689 A.2d 330 (Pa.Cmwlth. 1997).

feedback to students, institution-wide grading standards, and plagiarism policy." (Employer's Reply Brief at 5–6).

Section 402(h) of the Law, 43 P.S. § 802(h), provides that an employee "shall be ineligible for compensation for any week in which he is engaged in self-employment." Self-employment is not further defined, however, "the courts have utilized Section 4(*l*)(2)(B) [of the Law] to fill the void because its obvious purpose is to exclude independent contractors from coverage." *Glatfelter Barber Shop v. Unemployment Compensation Board of Review*, 957 A.2d 786, 789 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 599 Pa. 712, 962 A.2d 1198 (2008) (citation omitted).

Section 4(*l*)(2)(B) of the Law provides that:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that-(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B).

■ Thus, Section 4(*l*)(2)(B) creates a two-pronged test in order to determine whether a person is an employee or not: first, whether the person was free from control and direction in the performance of the work; and second, whether the business was one which is customarily engaged in as an independent trade or business. *Venango Newspapers v. Unemployment Compensation Board of Review*, 158 Pa. Cmwlth. 379, 631 A.2d 1384 (1993).

■ It is presumed that an individual is an employee, rather than an independent contractor, but the presumption can be overcome "if the putative employer sustains its burden of showing that the claimant was free from control and direction in the performance of his service, and that, as to such service, was customarily engaged in an independent trade or business." *Glatfelter*, 957 A.2d at 789 (citation omitted). As to whether an individual is free from direction and control not only with regard to the work done, but also with regard to the manner of performing it, we must look at the factors considered by the courts. *Pavalonis v. Unemployment Compensation Board of Review*, 57 Pa. Cmwlth. 289, 426 A.2d 215 (1981). Control is premised upon an actual showing of control with regard to the work to be done and the manner in performing it. *Glatfelter*, 957 A.2d at 789.

The Pennsylvania Supreme Court has indicated that the unique facts of each case must be examined in order to resolve the question of whether a person is an employee versus an independent contractor. *See Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 586 Pa. 196, 892 A.2d 781 (2006). In *Viktor*, the Supreme Court concluded that the limousine drivers were not under the control of their employers in the performance of their work, and, thus, were independent contractors rather than employees. The Court noted that the limousine drivers did not complete an application and were not interviewed for the job, they were not required to complete training for the job, they were hired on a job-to-job basis, they could refuse any assignment, they were not required to attend meetings and they were not given a handbook or uniform. Additionally, the Court noted that the limousine drivers were engaged in an independent trade as they

were they were free to work for more than one company at a time, including competitors, with no adverse consequences; the operation of their businesses and their ability to perform work did not depend on the existence of any one of the employers; and the fact that the limousine drivers bring all necessary perquisites of providing driving services to limousine companies, even though they do not own the limousines or bear all of the financial risk. *Viktor*, 586 Pa. at 213, 892 A.2d at 791.

In *Venango Newspapers,* this Court concluded that newspaper delivery persons were independent contractors rather than employees. We noted that the newspaper delivery persons were not subject to any training, were not required to attend any meetings, had no direct day-to-day supervision as they went about their daily deliveries in whatever manner they chose, used their own vehicles to deliver the product and their payment was dependent on the number of newspapers delivered rather than an hourly wage. This Court concluded that the newspaper delivery persons were free to perform their services for anyone who wished to contract with them, even competitors, and that delivering newspapers or any product is not, by its nature, limited to a single employer.

In *Glatfelter,* this Court concluded that a commissioned barber was an employee rather than an independent contractor. The barber had entered into an independent contractor agreement, leased a chair from employer, submitted all proceeds from services to the employer's cash register, received a set percentage of total payments on a weekly basis, was bound by employer's set prices for services, was forbidden from distributing business cards, was required to work the hours set by employer, used employer provided equipment and supplies and was required to attend meetings.

In *Krum,* this Court concluded that an attorney who contracted with an agency that maintained a database of resumes and matched attorneys with clients seeking attorneys was an independent contractor. The Court reached this conclusion by considering that the attorney had signed an agreement indicating that he was an independent contractor, did not receive any training or tools from employer, that the employer had no authority to review the attorney's performance or monitor his work, there was no guarantee of any number of clients or rate of pay, there were no taxes deducted from his paycheck, he was issued an IRS Form 1099, the employer did not set his hours or location and the services were not performed on the employer's premises.

In *CE Credits OnLine,* CE Credits Online offered nationwide online professional development courses and hired moderators to review students' postings on their internet website. This Court concluded that such moderators were independent contractors rather than employees by considering that the moderators signed contracts designating them as independent contractors, they did not receive any employee fringe benefits, they did not participate in on-the-job-training, no taxes were deducted from their paychecks, no tools were supplied to them, including the computer used to provide the services, attendance at meetings was not required and remuneration was fixed at an hourly rate. *CE Credits OnLine.* We noted that the entire employment relationship must be examined in determining whether it is an employment or independent contractor relationship, despite whether the signed agreement indicated that the person was an independent contractor or whether just one factor, i.e., a fixed hourly rate, indicated that the person might be an employee. *CE Credits OnLine,* 946 A.2d at 1168. We

noted that "control of the result only and not of the means of accomplishment did not transform an independent contractor relationship into an employer-employee relationship." *CE Credits OnLine,* 946 A.2d at 1169 (citation omitted). We also noted that the moderators had employer imposed deadlines, were expected to issue cordial professional responses that employed correct spellings and adhered to the rules of grammar, must complete each job within a twenty-four hour time period and were not supervised on a day-to-day basis. Additionally, we recognized that "[e]very job, whether performed by an employee or by an independent contractor, has parameters and expectations" and control is not a matter of "approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment." *Id.*

■ In the present matter, considering the relevant factors, we conclude that Claimant was an independent contractor, and, thus, Employer's wages should not have been considered in determining her unemployment compensation benefit. We note that the handbook provided by Employer contained general suggestions and requirements similar to the rubrics of quality standards expected by the employer in *CE Credits OnLine* and, as such, is not representative of the type of control over the time, place and performance of Claimant's services on a day-to-day basis as required to make her an employee. Claimant signed an agreement indicating that she was an independent contractor, Claimant admitted that she was an independent contractor, she did not receive any training from employer, Employer did not review her performance or monitor her work, she was not guaranteed any specific number of students, no taxes were deducted from her paycheck and she was issued an IRS Form 1099. Thus, Claimant was free from the direct control of Employer in the day-to-day performance of her services.

Accordingly, the order of the Board is reversed.

## *ORDER*

AND NOW, this 26th day of August, 2009, the order of the Unemployment Compensation Board of Review is hereby reversed and the Altoona Unemployment Compensation Service Center's financial eligibility determination is reinstated.