631 A.2d 1384

VENANGO NEWSPAPERS, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.

VENANGO NEWSPAPERS, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 16, 1993.

Decided Sept. 10, 1993.

Reargument Denied Nov. 5, 1993.

380

Keith M. Pemrick, for petitioners.

Maribeth Wilt–Seibert, Asst. Counsel and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

David R. Morgan, for amicus curiae Pennsylvania Newspaper Publishers Ass'n.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Venango Newspapers (Venango) appeals the orders of the Unemployment Compensation Board of Review (Board) finding that Paul A. Ghering, Jr. and Richard N. Beightol, Jr. (Claimants) to have been employees rather than independent contractors.

Each Claimant contracted with Venango to deliver newspapers to Venango's subscribers. When they began delivering newspapers, Claimants had been receiving unemployment compensation benefits as a result of being separated from employment with previous employers. After delivering newspapers for approximately six months, Beightol decided to quit, while Ghering's contract was terminated after nine months for non-performance. Both Claimants applied for unemployment compensation benefits, each contending that he was eligible because he was an employee of Venango, not an independent contractor. Beightol contended that he was entitled to benefits because he had good cause to quit, while Ghering claimed that his conduct that caused his discharge was not "willful." Venango opposed both claims contending that Claimants were not employees but independent contractors, and further, that

Beightol voluntarily quit and Ghering was discharged for non-performance.

The Board, finding them employees and not independent contractors,[1] nonetheless found Claimants not entitled to benefits because Beightol did not have good cause to quit and Ghering was discharged for just cause.[2] Both, however, remained entitled to benefits as a result of their separation from previous employers, *albeit* reduced because of their conduct in either voluntarily quitting or being discharged for willful misconduct.[3] Based upon the Board's conclusion that in finding that Claimants were Venango employees, Venango became one of Claimants' "base-year employers."[4] As a base-year employer, Venango's unemployment insurance account was proportionately charged, along with other base-year employers, to pay Claimants' partial unemployment compensation benefits. Venango filed the instant appeals, which by order dated July 13, 1993, were consolidated.

## I.

The Board contends that we should quash Venango's appeal. The Board recognizes that because of its finding that Claimants are Venango's employees, Venango becomes their base-year employer and the partial benefits each Claimant receives

1. Act of December 5, 1936, Second Ex.Sess., P.L. 2897 (1937), *as amended*, 43 P.S. § 802(h).

2. Beightol, having quit without sufficient cause, was disqualified by Section 402(b). Ghering was considered to have been discharged due to willful misconduct and disqualified under Section 402(e) of the Law.

3. Claimants separated from part-time employment while receiving benefits from being separated from previous employers are disqualified only to the extent that part-time wages exceeded their partial benefit credit. *Unemployment Compensation Board of Review v. Fabric*, 24 Pa.Commonwealth Ct. 238, 354 A.2d 905 (1976) and *Richards v. Unemployment Compensation Board of Review*, 85 Pa. Commonwealth Ct. 90, 480 A.2d 1338 (1984). Accordingly, Ghering would still be eligible to receive a $50 a week partial benefit and Beightol $51 a week.

4. Section 4(a) of the Law defines a base year as the first four of the last five completed calendar quarters immediately preceding an application for benefits. An employer who pays wages to the claimant during this period is a base-year employer subject to being charged for benefits paid. 43 P.S. § 782(a); *Byrd v. Unemployment Compensation Board of Review*, 64 Pa.Commonwealth Ct. 212, 439 A.2d 898 (1982).

chargeable, not only against their previous employers, but also to Venango's unemployment insurance account. 43 P.S. § 782(a)(1).[5] Because it has the ability to file the petition to seek relief[6] from charges and the strong likelihood that the petition would be granted, the Board contends that Venango is not "aggrieved" and, consequently, under the provisions of both Section 702 of the Administration Agency Law and Pennsylvania Rules of Appellate Procedure 501, it lacks standing to appeal the orders.[7]

The Board's contention ignores that what determines whether a person is aggrieved is not some speculative remedy that possibly will remove the harm caused by the original order, but the effect the order has on the party taking the appeal. If the order causes direct harm, the party is aggrieved and has a right to appeal. By finding that Claimants were Venango's employees, and Venango a base-year employer is required to contribute to Claimants benefits, the Board's order has a direct adverse pecuniary effect making Venango "aggrieved" and giving it the right to appeal.

## II.

In finding that Venango had an employer-employee relationship with Claimants rather than being independent contrac-

5. This Section provides in part:
   [The] account [of a base-year employer] shall be charged with all compensation, including dependents' allowances, paid to each individual who received from such employer wage credits constituting the base of such compensation. . . .

6. 43 P.S. § 782(a)(1) authorizes relief from charges upon application for any benefits paid out of a base-year employer's account under a willful misconduct discharge or a voluntary separation for reasons not connected with work. An application for relief from charges is a separate and distinct action that must be relied upon by the Board. *Commonwealth of Pennsylvania, Department of Labor and Industry v. Unemployment Compensation Board of Review,* 88 Pa.Commonwealth Ct. 519, 501 A.2d 297 (1985).

7. Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702 requires that a party be aggrieved as a condition precedent to being able to appeal the order of a commonwealth agency. Similarly, Pennsylvania Rule of Appellate Procedure 501 provides that only parties aggrieved by an order have standing to appeal it.

tors, the Board, in addition to the Claimants being paid 20.32 cents per paper delivered and mileage, relied on the following findings of fact: [8]

3. The Claimant did sign a contract to provide services to the employer.

4. The employer did required [sic] the claimant to pick up the newspapers any time after 12:30 a.m. and to have the newspapers delivered by 6:30 a.m. The claimant was also required to deliver advertisers within a three-day period of time during his customary time frame for delivering newspapers.

5. The carrier is required to provide prompt, dependable delivery service.

6. The claimant does not have any ownership in the business of Venango Newspapers.

7. The claimant does not have special licenses or an established business.

8. The claimant does not have any financial risk involved other than the claimant does drive his own vehicle and provides all expenses and insurance for that vehicle.

9. The employer also provided additional payment of 5 cents a tube and extra mileage for the set-up of newspaper tubes and placement of stickers on the tube.

10. The employer had the right to adjust the claimant's amount of deliveries by either increasing or decreasing the amount.

11. The employer did provide an incentive of $2 for every new start.

12. The carrier could obtain new starts from other routes other than his own.

13. The claimant was responsible to provide and pay a substitute if he was unable to perform his job duties.

8. Because the findings of fact with regard to the existence of an employment relationship made by the Board are almost identical in both cases, we will list only those found by the Board in the Claim of Paul A. Ghering, Jr. in Board Decision B–308763.

14. The employer does all the billing and collection for payment of the newspapers.

15. The employer provides the carrier with a route listing and the claimant cannot deliver outside his route.

16. The employer provided the claimant with newspaper tubes.

17. The claimant lacked the authority to negotiate the price of the newspaper with the customer.

18. The employer paid for any excess mileage on the claimant's vehicle.

Venango contends that these findings establish that Claimants were not employees but independent contractors, and, as such, were ineligible to receive benefits under Section 402(h) of the Law. Section 402(h) renders a claimant ineligible to receive benefits in any week in which the claimant is engaged in self-employment. What constitutes employment, in turn, is delineated by Section 4(*l* )(2)(B) of the Law, which provides in part:

> [s]ervices performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—
> (a) such individual has been and will continue to be free from control or direction over the performance of such services both under the contract for service and in fact; and
> (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l* )(2)(B).

This section creates a two-pronged test to determine whether a person is self-employed and not entitled to unemployment compensation benefits under Section 402(h). For a claimant to be ineligible for benefits, the one against whom the claim is made has the burden to establish that the claimant was (a) free from control and direction in the performance of the work; and (b) the business is one which is customarily engaged in as an independent trade or business. *Attorneys on Call v. Unemployment Compensation Board of Review,*

155 Pa.Commonwealth Ct. 96, 624 A.2d 754 (1993). Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee. *Kardon v. Unemployment Compensation Board of Review*, 40 Pa.Commonwealth Ct. 20, 396 A.2d 487 (1979).

Venango contends that it meets both prongs of the test because the facts as found by the Board establish that Claimants were both free of any control or direction in their work and engaged in an independent business, thus rendering them independent contractors under Section 402(h) of the Law and ineligible to receive unemployment compensation benefits. We agree.

As to the first prong of this test to determine whether a claimant was free from control, we have looked to how the job was performed and other factors such as whether there was a fixed rate of remuneration and whether taxes were deducted from the claimant's pay, whether the employer supplied the tools necessary to carry out the services, and whether the employer offered on-the-job training and the requirements demanded by the employer. *Pavalonis v. Unemployment Compensation Board of Review*, 57 Pa.Commonwealth Ct. 289, 426 A.2d 215 (1981). Nothing here indicates the type of relationship establishing the control necessary upon which to find an employment relationship. Claimants were not provided with any form of training or required to attend any meetings with Venango. There was no direct day-to-day supervision of the Claimants as they went about their deliveries in whatever manner they chose. The Claimants were required to utilize their own vehicles in delivering the product and provided only with newspaper tubes which were essentially another product delivered to subscribers. Further, payment was computed by papers delivered rather than a hourly wage, from which no taxes were deducted.

The only control exercised by Venango was over the territory Claimants could cover, the time for picking up the product, and requiring that the Claimants provide prompt, dependable delivery of the product before 6:30 a.m. each day. These

factors do not indicate control over the rendering of service, but rather, they are parameters of the contract for service entered into between Claimants and Venango. *Douglas v. Workmen's Compensation Appeal Board (Dennis Truck Co.)*, 40 Pa.Commonwealth Ct. 101, 396 A.2d 882 (1979).

As the foregoing establishes, Venango did not have the right nor did it exercise any actual control over the manner in which Claimants performed their tasks—nothing more than a contract to provide delivery of a product. Claimants themselves determined how they were to provide their service, even to the point of being able to hire and pay subcontractors and even carrying other products from other companies to be delivered. Consequently, Claimants were not under the control of Venango.

■ As to the second prong of the Section 4($l$)(2)(B) test, we look to see whether the Claimants had a proprietary interest in delivering newspapers that would render it an independent business. Two important factors are to be considered in this evaluation; whether the individual was capable of performing the activities in question to anyone who wished to avail themselves of the services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services. *Jochynek v. Unemployment Compensation Board of Review*, 32 Pa.Commonwealth Ct. 86, 378 A.2d 490 (1977).

Here, the Claimants admitted that they were free to perform delivery services for anyone who wished to contract with them—even competitors of Venango. In addition, the business of delivering newspapers or anything else is, by its very nature, not limited to a single employer. We came to the same conclusion in *York Gazette Co. v. Bureau of Employment Security*, 28 Pa.Commonwealth Ct. 410, 368 A.2d 1314 (1977), when confronted with an almost identical situation. In *York Gazette*, we held that where newspaper delivery persons own, operate and maintain their own vehicles in the delivery and may sub-contract the service, they hold a sufficient proprietary interest in the business of delivering newspapers as to

satisfy the second prong of the Section 4(*l* )(2)(B) test. *Id.* at 414, 368 A.2d at 1316.[9] Claimants, here, likewise hold a proprietary interest in their delivery service business.

Because Claimants were not engaged in employment with Venango as defined by Section 4(*l* )(2)(B), that portion of the Board's order making Venango a base-year employer is reversed.

### ORDER

AND NOW, this 10th day of September, 1993, the orders of the Unemployment Compensation Board of Review, No. B–308763, dated February 5, 1993, and No. B–308764, dated February 5, 1993, are reversed.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's holding that Claimants were not engaged in employment with Venango as defined by Section 401(*l* )(2)(B) of the Unemployment Compensation Law, 43 P.S. § 753(*l* )(2)(B). The facts in the present case are remarkably similar to those in *Johnson v Workmen's Compensation Appeal Board (Dubois Courier Express and PMA Insurance Co.),* —— Pa.Commonwealth Ct. ——, 631 A.2d 693 (1993), wherein we held that a workers' compensation claimant who delivered newspapers for the Dubois Courier Express was an independent contractor rather than an employee. For the reasons set forth in Judge Friedman's dissent in *Johnson,* I believe Claimants in the present case are employees of Venango rather than independent contractors.

As Judge Friedman noted in *Johnson,* the key factor in determining employee status is the employer's right to control or supervise the manner and method by which the claimants completed their deliveries. Dissenting op. 631 A.2d at 699–700. Like the Dubois Courier in *Johnson,* Venango retains

---

**9.** The Board argues that *York Gazette* is distinguishable from the present case because here, the newspaper compensates the Claimants for mileage and, therefore, shares an interest in the vehicle. However, in *York Gazette,* the claimant was also compensated for mileage. 28 Pa.Commonwealth Ct. at 413, 368 A.2d at 1315.

control over all essential aspects of Claimants' work: their time, their territory and their manner of performance. If Claimants did not deliver the papers and advertisers in a certain condition or manner, or by a certain time which did not please the customer, the customers complained directly to Venango which was free to, and in fact did, terminate one of the Claimants.

I would hold that Claimants are employees under Section 401($l$)(2)(B).