**Donald R. TRACY, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 11, 2011.

Decided June 21, 2011.

---

Jane Lewis Volk and Amanda R. Gerstnecker, Pittsburgh, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

Donald R. Tracy petitions this court for review of the order of the Unemployment Compensation Board of Review which affirmed the referee's determination that Claimant, Richard Barrett, was not rendered ineligible for unemployment compensation benefits by Section 402(h) of the Unemployment Compensation Law (Law).[1] The issue before us is whether the Board erred in finding that Claimant was not an independent contractor. After review, we reverse.

Tracy was the unsuccessful candidate for Lieutenant Governor of Illinois in the February 2, 2010, election. Claimant was hired by Tracy as his campaign manager for a one-month period from January 3, 2010, until February 2, 2010. Under the contract signed by the parties, Claimant was to be paid $3000 plus a stipend for a cell phone. After Tracy's unsuccessful bid for office, Claimant filed for benefits with the Erie Unemployment Compensation Service Center, which granted benefits for the week ending January 9, 2010, and January 16 through February 6, 2010.[2] Tracy appealed and a hearing was held before the referee on June 12, 2010, at which Claimant appeared and testified. Tracy and Tracy's witness, Glen Hodas, testified via telephone.

Tracy testified that he is an attorney with a private practice in Illinois and that he ran for Lieutenant Governor of Illinois in 2010. His campaign committee was "Tracy for Illinois" and was registered in Illinois and properly filed with the State Board of Elections. Tracy testified that Tracy for Illinois had no employees, just several volunteers as well as ten to fifteen independent contractors or consultants. Toward the end of his campaign, Tracy realized that he needed a campaign manager to organize the young volunteers. Claimant was recommended for the position. Tracy testified that Glen Hodas, a media consultant contractor with the campaign, interviewed Claimant over the phone and that Tracy later drew up a contract for Claimant. Tracy testified that Claimant was hired as a 30–day consultant for $3000 a month, along with a stipend for a cell phone. Claimant signed the contract on January 3, 2010, in Tracy's office in Illinois. Tracy further explained that he saw Claimant one to two times a week, that they spoke by phone four to five times a week and that while they did not have regular meetings, he would see Claimant either at the campaign office or his law office. After some of his campaign volun-

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h). Section 402(h) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which he is engaged in self-employment...."

2. The record is not entirely clear on this point and we are further hampered by the fact that the Board was unable to locate the first few pages of the Service Center's determination.

The Board noted that only page 3 could be found and that pages 1 and 2 were missing from the file. *See* Original Record (O.R.), Item 4, (Notice of Determination). However, from the Claim Record, it appears that Claimant first filed for unemployment compensation benefits in June 2009, and that after his employment with Employer Tracy ended, he reported this work to the Erie UC Center. *See* O.R. Item 1.

teers complained that Claimant was not doing any work, Tracy had Claimant make some political appearances for him, but he never gave Claimant a list of specific assignments or directions on how to perform his job. Tracy testified that Claimant was hired because he had both the life experience and political experience to organize and manage the rookie volunteers. Finally, Tracy testified that, win or lose, Claimant's position ended on February 2, 2010, the date of the election.

Glen Hodas testified that he used his network of political associates to find a campaign manager for Tracy for Illinois. Hodas testified that they needed a mature person with life experience, who also had communication and press experience, and that Claimant's resume and Linked–In page indicated that he had previous experience on a political campaign in Pittsburgh with the Harris for Mayor campaign. Hodas testified that he did not supervise Claimant, nor was Claimant required to work any specific hours or attend regular meetings. Hodas stated that he did not tell Claimant how to do his job and only gave advice if he was asked. Hodas testified that it was a typical arrangement in the business to have an independent contractor as a campaign manager.

Claimant testified that he spent six years as a political reporter in Illinois and knew that Tracy for Illinois needed someone who could network. He testified that the campaign supplied him with whatever he needed and that he was reimbursed for any supplies he bought and that the only thing he was not reimbursed for was his gas mileage. Claimant testified that he worked between ten and fourteen hours a day for Tracy and that they communicated on a daily basis. Claimant also testified that he followed the guidance provided by Tracy and Hodas with respect to certain aspects of his job that he was unfamiliar

with, since most of his previous experience had been as a political reporter. Claimant stated that while he did work on the Harris campaign in Pittsburgh, it was an unpaid volunteer position and that the only other campaign he worked on as a paid employee was Mark Critz for Congress subsequent to Tracy's campaign.

The referee found that Claimant was hired as a campaign manager by Tracy and that he did not have a business or company for which he provided these services on a regular basis. Concluding that Claimant was not ineligible for benefits under Section 402(h) of the Law, the referee granted benefits.

Tracy appealed to the Board, which made the following findings of fact:

4. The claimant was hired as [Tracy's] campaign manager.

5. The claimant regularly met with [Tracy].

6. [Tracy] paid the claimant's expenses.

7. The claimant could not work on any other campaigns.

8. The claimant reported every day to [Tracy's] campaign headquarters.

9. The claimant was subject to the control and direction of [Tracy].

10. The claimant was not engaged in an independent business.

Board's Decision and Order at 1–2. The Board noted that under Section 4($l$)(2)(B) of the Law, 43 P.S. § 753($l$)(2)(B), services performed by an individual for wages shall be deemed to be employment unless it is shown that the individual is free from control or direction over the performance of his services and as to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business. The Board concluded that because Claimant was subject to the control and direction of Tracy and that he (Claimant) did not operate an

independent business, he was not self-employed and thus eligible for benefits under Section 4(*l*)(2)(B) and Section 402(h) of the Law, 43 P.S. §§ 753(*l*)(2)(B) and 802(h), respectively.

On appeal to this court, Tracy argues that the Board erred in finding that Claimant was an employee performing his services under the control and direction of Tracy as his employer, when the evidence established that Claimant was paid without withholding for taxes (and was issued a Form 1099); Claimant was not provided with any training; and Claimant was not required to attend regular meetings. Tracy also argues that the Board erred in finding that Claimant was not engaged in an independent trade or business when Claimant testified that he suffered a financial loss as a result of his contract with Tracy. Tracy asserts that Claimant held himself out as a self-employed expert in the field of state-wide political campaigns in his emails and resume and assumed the risk of profit and loss when he signed the contract with Tracy.[3]

In order to rebut the presumption that an individual working for wages is an employee eligible for unemployment compensation benefits, the employer must demonstrate, *inter alia*, that the claimant was free from control and direction in the performance of his work and that the claimant was customarily engaged in an independently established business while providing such services. *Beacon Flag Car*

*Company v. Unemployment Comp. Bd. of Review*, 910 A.2d 103 (Pa.Cmwlth.2006). In addition, the following factors are relevant in determining whether an individual worked as an employee or an independent contractor: 1) a fixed rate of remuneration; 2) withholding of payroll taxes; 3) supplying tools for the individual; 4) supplying training to the individual; and 5) requiring that the individual attend regular meetings. *Pavalonis v. Unemployment Comp. Bd. of Review*, 57 Pa.Cmwlth. 289, 426 A.2d 215 (1981). While no one single factor is conclusive, the courts look to the entire relationship to determine whether the requisite control exists to establish an employer-employee relationship. *CE Credits OnLine v. Unemployment Comp. Bd. of Review*, 946 A.2d 1162 (Pa. Cmwlth.2008). With respect to whether the individual is customarily engaged in an independent business or trade in performing his services for employer, one factor is whether the individual assumes the risk of profit or loss in performing these services. *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786 (Pa. Cmwlth.2008). The courts will also look to "whether the individual was capable of performing the activities in question to anyone who wished to avail themselves of the services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services." *Venango Newspapers v. Unemployment Comp. Bd. of Re-*

---

**3.** Before both the referee and the Board, Tracy argued that Pennsylvania had neither general nor specific personal jurisdiction over him or Tracy for Illinois, as he is a resident of Illinois, the campaign was registered in and conducted solely in Illinois, and the only contact with Pennsylvania is that Claimant is a resident thereof. Unlike subject matter jurisdiction, which cannot be waived and may be raised at any time, personal jurisdiction may be waived. *Wagner v. Wagner*, 564 Pa. 448, 768 A.2d 1112 (2001). Therefore, while the issue was raised by Tracy in his petition for review before this court, his failure to address the issue in his brief leads to our conclusion that the issue has been abandoned and therefore waived. *See Jimoh v. Unemployment Comp. Bd. of Review*, 902 A.2d 608 (Pa. Cmwlth.2006); *McDonough v. Unemployment Comp. Bd. of Review*, 670 A.2d 749 (Pa. Cmwlth.1996); *Tyler v. Unemployment Comp. Bd. of Review*, 139 Pa.Cmwlth. 598, 591 A.2d 1164 (1991)(Issues raised but not briefed are waived).

*view,* 158 Pa.Cmwlth. 379, 631 A.2d 1384, 1388 (1993). The issue of whether the claimant was self-employed is a question of law subject to our plenary review. *Buchanan v. Unemployment Comp. Bd. of Review,* 135 Pa.Cmwlth. 567, 581 A.2d 1005 (1990).

As for the first prong of the test, whether or not an individual is subject to the direction and control of the employer, we have held that the issue of control encompasses not only the nature of the work to be done but also the manner of performing it. *Erie Independence House, Inc. v. Unemployment Comp. Bd. of Review,* 126 Pa. Cmwlth. 358, 559 A.2d 994 (1989). According to the facts as found by the Board, Claimant regularly met with Tracy, Tracy paid Claimant's expenses, Claimant reported every day to Tracy's campaign headquarters, and that Claimant was subject to the control and direction of Tracy. A review of the record, however, reveals that there is insufficient evidence to support the Board's finding on the issue of control.

Claimant testified that he was contacted by Glen Hodas about the position and that he then e-mailed Tracy and said, "here's what I can do for you." Hearing of June 15, 2010, Notes of Testimony (N.T.) at 20. Claimant further stated that he was reimbursed for anything he bought that he needed for his position and that the only thing he was not paid for was his gas mileage, which amounted to approximately $600.00. Claimant did not testify that he was required to work any specific hours or attend regular meetings, stating only that he was "in there every single day at 6:30 in the morning ... put[ting] in a minimum of 10, 12, 14 hours every single day." *Id.* at 20–21. Claimant stated that he was ready to do whatever was needed and he communicated with Tracy every day. As for any control or direction over the performance of his duties, Claimant testified only that

he followed both Tracy's and Hodas's guidance when he wasn't sure about something. Claimant admitted signing the contract in which he agreed to be paid as a consultant at $3000.00 per month and to pay all taxes on the contractual payments.

On the other hand, Tracy testified that he did not have regular meetings with Claimant nor was Claimant required to attend regular campaign meetings, stating that:

> I think I met with him once a week—maybe twice a week.... we did not have any regular meetings. I met with—[Claimant] where [he] set up shop and I was there one time during the contract term and I think [Claimant] was in my office a couple of times.

N.T. at 10. In addition, Tracy testified that Claimant was not required to maintain any specific hours of work nor was he required to "clock in and clock out" on a daily basis. *Id.* Tracy also testified that Claimant was not directed in how to perform his job nor given a list of instructions on how to do his job and that Claimant was not required to submit reports on the work he was performing for the campaign. Tracy stated that Claimant was paid under the terms of the contract by check on or about January 15, 2010 and again on February 2, 2010, and that no payroll deductions were taken from these checks. Tracy stated that when Claimant signed the contract, the only change he requested was that he be reimbursed for a cell phone, which Tracy noted on the contract with an asterisk and "plus $100 for ... cell phone plan. D.T." Original Record, Item 2, Employer Separation Information, at 2A. Finally, Tracy testified that he agreed to reimburse Claimant only for "pre-approved expenses including mileage outside the City of Springfield [IL]...." *Id.*

Tracy's witness, Glen Hodas, testified that he did not supervise Claimant in the

performance of his duties as campaign manager or tell him how to do his job. Hodas stated that Claimant was not required to work any specific hours or attend regular meetings. Having worked himself as a campaign manager on statewide campaigns, Hodas testified that on those occasions, he was considered an independent contractor, and that it is a typical arrangement for a campaign to retain an independent contractor as campaign manager. Neither the referee nor the Board discredited any of the above testimony.

Tracy did not determine the hours or place of work, except on the occasion where he had Claimant make campaign appearances on his behalf. Neither Tracy nor Hodas supervised Claimant. Tracy did not provide Claimant with any training and did not require that he attend regular meetings. The fact that they communicated daily does not in and of itself indicate that Tracy controlled Claimant in the performance of his job. In sum, we believe that under these facts, there was insufficient evidence to support a conclusion that Tracy controlled and directed Claimant in the performance of his work.

Next, we reach the second prong of the test, that is, whether or not the job Claimant was performing was an independently established trade, occupation, profession or business. The factors relevant to this determination are whether the individual was capable of performing the work for anyone who wished to utilize his services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services. *See Beacon Flag; Venango Newspapers.* Here, although the Board found that Claimant could not work on any other campaigns while working for Tracy, we disagree that it is indicative of anything other than the fact that the election was only one month away and Claimant's full time services were needed for that brief final stretch of the campaign. It is the nature of political campaigns that the candidate engage various political consultants for brief or very specific time periods and that the engagement lasts, in most cases, only as long as the contract specifies, which is usually the length of the election process up until the day of the election. Barrett worked for the campaign of Franco Doc Harris for Mayor of Pittsburgh from September through November 2009, for Tracy from January through February of 2010, and then until May 18, 2010 for "Mark Critz for Congress." There was evidence from Glen Hodas that it was the typical arrangement on statewide political campaigns to retain the services of independent contractors for the position of campaign manager. The contract between Barrett and Tracy specifically stated that, "The relationship between the parties is that of independent contractor, not employer-employee." (O.R. at 2A, R.R. 10a). Finally, Claimant was not paid on an hourly basis but in two lump sum payments from which there were no withholdings for taxes.

For all of the foregoing reasons, we conclude that the Board committed an error of law in determining that Claimant was an employee of Tracy. Accordingly, we reverse.

## ORDER

AND NOW, this 21st day of June, 2011, the order of the Unemployment Compensation Board of Review in the above captioned matter is hereby REVERSED.