IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah Silver,                          :
                    Petitioner           :
                                         :
        v.                               :    No. 1206 C.D. 2019
                                         :    Argued: June 9, 2020
Unemployment Compensation                :
Board of Review,                         :
                    Respondent           :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                                FILED:  July 7, 2020


        Deborah Silver (Claimant) petitions for review from an Order of the
Unemployment Compensation Board of Review (Board), finding her ineligible for
unemployment compensation (UC) benefits pursuant to 404(c) of the UC (Law).[1]
Certified Record (C.R.), Item No. 7.  Claimant argues that her work as an arbitrator
should count toward her weeks of eligibility for receiving UC benefits.  Discerning
no error below, we affirm.


        On May 5, 2019, Claimant filed an application for UC benefits, which
the local service center denied because Claimant did not have enough credit weeks[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §804(c).

[2] Section 4(g.1) of the Law, 43 P.S. §753(g.1), states, in pertinent part, that a "[c]redit week" is "any calendar week in an individual's base year with respect to which she was paid in

in her base year[3] of January 1, 2018, through December 31, 2018, to qualify for UC benefits.[4] *Id*. Claimant appealed, and a UC referee conducted a hearing, at which Claimant testified, on June 26, 2019. The referee determined Claimant was ineligible for benefits because the remuneration she received from the Philadelphia Arbitration Center (PAC) and the Delaware County/Media Arbitration Center (DCAC) did not count as "covered wages" from employment as defined in the Law. C.R., Item No. 13. However, the referee modified the service center's determination to reflect that Claimant earned 14 credit weeks, rather than 12, during her base year. Nonetheless, Claimant still did not meet the threshold of 18 credit weeks necessary to be eligible for UC benefits.

The referee made the following findings of fact:

---

employment…remuneration of not less than: (1) One hundred and sixteen dollars ($116) . . . . (2) Sixteen (16) times the minimum hourly wage required by the act of January 17, 1968 (P.L.11, No.5), known as 'The Minimum Wage Act of 1968. . . .'"

[3] "Base year" is defined in the Law as follows: "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(a) of the Law, 43 P.S. §753.

[4] Section 404(c) of the Law, 43 P.S. §804(c), states, in pertinent part:

> [i]f an otherwise eligible employe has base year wages in an amount equal to or in excess of the amount of qualifying wages…[s]pecified for the Determination of Rate and Amount of Benefits . . . as determined under subsection (a) of this section, **and had eighteen (18) or more credit weeks during his base year, he shall be entitled (to benefits). . . . Notwithstanding any other provision of this act, any employe with less than eighteen (18) credit weeks during the employe's base year shall be ineligible to receive any amount of compensation.**

(Emphasis added.)

. . . .

2. The [C]laimant earned base year wages and credit weeks as follows: 1st Q 2018-$15,499/8 credit weeks; 2nd Q 2018-$8604/4 credit weeks; 3rd Q 2018-$1105/2 credit weeks; 4th Q 2018-$0/0 credit weeks.

3. The [C]laimant earned total base year wages in the amount of $25,209, and earned a total of 14 credit weeks.

4. During the [C]laimant's base year, the [C]laimant performed services as an Arbitrator with the [PAC] and [DCAC].

5. In order to qualify as an Arbitrator for PAC, the [C]laimant was required to complete a CLE[5] course which the [C]laimant paid for.

6. In order to qualify as an Arbitrator for DCAC, the [C]laimant completed a CLE course, which the [C]laimant paid for.

7. The [C]laimant performed services as an Arbitrator with PAC on January 18, 2018, May 9, 2018 and October 25, 2018, for which the [C]laimant was compensated a flat rate of $225 per day.

8. The [C]laimant performed services as an Arbitrator with DCAC on April 17, 2018, for which the [C]laimant was compensated at a flat rate of $200.

9. No taxes were removed from the remuneration the [C]laimant received from performing services as an Arbitrator for either PAC or DCAC.

10. The [C]laimant paid taxes on the remuneration she received from performing services as an Arbitrator for both PAC and DCAC.

---

[5] The term "CLE" refers to "Continuing Legal Education."

3

11. The [C]laimant was permitted to perform services as an Arbitrator while employed, and also for other counties as allowed, which did not jeopardize the [C]laimant's ability to perform services as an Arbitrator with either PAC or DCAC.

12. The [C]laimant was offered opportunities to perform services as an Arbitrator, but was permitted to reject those opportunities at her discretion.

13. With respect to PAC, the [C]laimant has contacted PAC to determine if her services were required.

14. The [C]laimant was required, among other things, to fill out and sign a verdict form for any arbitration she performed, and the [C]laimant was provided with amenities such as furniture in the room in which the arbitration occurred, writing materials and a computer for the [C]laimant and her fellow Arbitrators to conduct research if necessary.

C.R., Item No. 13.

The referee determined that the most significant factors weighing against a finding that Claimant earned covered wages from employment, when she served as an arbitrator, were: (1) Claimant was compensated by the day as opposed to hourly; (2) the expectations and requirements on Claimant's final work product were not dictated by any employer, rather they were dictated by the mandates of "the [l]aw and process"; (3) Claimant paid taxes on the remuneration she received "as opposed to having taxes removed"; (4) Claimant was not required to take CLE courses by any "employer," rather she voluntarily took the CLEs to further her desire to become an arbitrator; and (5) Claimant would contact PAC to determine if her services were needed, which demonstrated an active role on Claimant's part to secure work, as those engaged in an independent business would do. *Id.*

4

Claimant appealed to the Board, which affirmed the referee. In its opinion, the Board adopted the referee's findings and conclusions and determined that Claimant's work as an arbitrator constituted self-employment. The Board found Claimant had "considerably more freedom than an employee to perform her work and was self-governing and autonomous." C.R., Item No. 15. The Board also noted Claimant was paid by the job and that payment by the job, rather than by the hour, suggested work as an independent contractor. *Id.* The Board did not agree with Claimant's position that she is not customarily engaged in an independently established trade, occupation, profession, or business and that she only works sporadically. The Board noted that Claimant testified she had "relationships" with PAC and DCAC for five to seven years. The Board concluded that Claimant is a self-employed arbitrator, has been doing this work for years, and is not an employee, adding that Claimant "paid for classes, pays her own taxes, and may reject opportunities at her own discretion." *Id.*

Claimant filed a petition for review,[6] arguing the Board erred in determining that her work as an arbitrator constitutes self-employment, which should not be counted toward her eligibility weeks for receiving UC benefits.

"A person receiving remuneration for services rendered is presumed to be employed and therefore to have employment within the meaning of the Law."

---

[6] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422 (Pa. 2003).

*Famularo Catering, Inc. v. Dep't of Labor & Industry, Office of Unemployment Comp. Tax Servs.*, 125 A.3d 866, 869 (Pa. Cmwlth. 2015) (quoting *Electrolux Corp. v. Dep't of Labor & Industry, Bureau of Employer Tax Operations*, 705 A.2d 1357, 1359-1360 (Pa. Cmwlth. 1998)).

> Section 402(h) of the Law, 43 P.S. §802(h), states:
>
> An employe shall be ineligible for compensation for any week--
>
> In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.
>
> The Law does not define "self-employment." However Section 4(*l*)(2)(B) of the Law defines "employment" as follows:
>
> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [Department] that – (a) such individual has been and will continue to be free from control or direction over their performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.[7]

---

[7] Parts (a) and (b), as noted here, are commonly referred to as the "two-prong test" to determine whether an applicant for unemployment benefits was an employee or independent contractor at the time of separation from employment.

*Lowman v. Unemployment Comp. Bd. of Review*, 178 A.3d 896, 900 (Pa. Cmwlth.) (*en banc*), *appeal granted,* 199 A.3d 862 (Pa. 2018).

On appeal, Claimant argues that her work as an arbitrator should count toward her eligibility weeks for UC purposes because she is not self-employed. She argues that the arbitration centers (PAC and DCAC) exercise substantial control over her work, set her salary and schedule, and establish her payment by the job, rather than by the hour. She also argues that paying her own taxes, rather than taxes being withheld, is due to the decision of the respective arbitration center and is not something within her control. Claimant further maintains that the centers provide her with office space, furnishings, equipment and supplies, and substantial training, and that the centers also set the rules regarding how to conduct hearings, handle certain situations that may arise during hearings, and how to complete verdict and award forms. She notes that lawyers from the arbitration centers teach the CLE courses necessary to become an arbitrator, even though she paid to attend those courses. Pet'r's Br. at 9.

Claimant further contends that "[t]here is nothing preventing an "employee" from seeking and taking additional work, [and] having more than one paid job does not take away someone's employment status." Pet'r's Reply Br. at 19. In support of her position, Claimant cites this Court's opinion in *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011),[8] in which we stated: "the fact that an unemployed person agrees to accept,

_____

[8] In *Silver*, the claimant "began receiving unemployment compensation in May 2009, following the termination of her employment with NAVTEQ, Inc. Early in September 2009, the

7

and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business." Pet'r's Reply Br. at 19.

In order to refute the Board's findings, Claimant individually addresses each of the various factors examined by the Board in its determination. Specifically, Claimant argues that, in addition to notepads and award sheets, PAC and DCAC provided her with space to conduct arbitrations and that both arbitration centers provided basic furnishings, including tables, chairs, a computer to check the court docket, and a furnished waiting room for the parties and their lawyers. Claimant notes that, at one time, PAC provided a Bible in each arbitration room to swear-in witnesses. Pet'r's Br. at 15. Claimant further argues that, without the arbitration centers, she could not independently perform arbitrations because arbitrations are not conducted in private law offices. She asserts that it was not her decision to be paid by the day, as opposed to by the hour, as this was, and is, a matter under the control of the arbitration centers. Pet'r's Br. at 16-18.

In addition, Claimant argues it does not matter that she paid for her own training to become an arbitrator, where she was required to take compulsory training to serve as an arbitrator in Philadelphia and in Delaware County. Claimant stresses

---

claimant was contacted by Gerson Lehrman Group, Inc. (Gerson). Gerson had seen the claimant's resume online and asked if the claimant would be interested in providing telephone consultations on an intermittent, as-needed basis with Gerson's clients. The claimant agreed and submitted biographical information for Gerson to display on its website. With respect to the consultations, the claimant set her own hours and rate of pay; she worked from home, and she was under no obligation to accept any assignments. The claimant's job title was 'non-agent independent contractor.' The claimant accepted a total of four consultation assignments through Gerson, from September 11, 2009, to October 20, 2009." *Silver*, 34 A.3d at 894.

that the training is provided by individuals from the arbitration centers and that once trained, arbitrators are required to follow the rules of the arbitration centers, including how to complete an award form at the conclusion of the arbitration. Pet'r's Br. at 18-20. Claimant also notes that she has a long-standing arrangement with PAC and DCAC (over the past five to seven years), despite not working at either center on a full-time basis. Pet'r's Br. at 22.

In response to Claimant's argument, the Board argues that Claimant is a licensed attorney, she desired to become an arbitrator, and that, in order to perform as an arbitrator in Philadelphia and Delaware counties, she was required to have certain training.[9] The Board contends that, thereafter, she was placed on the arbitrator lists and began to provide arbitration through both PAC and DCAC, two separate entities. Resp't's Br. at 6. Citing *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations,* 892 A.2d 781, 791 (Pa. 2006), the Board notes that "[a] determination regarding the existence of an employer/employee relationship is a question of law which is determined based on the unique facts of each case." The Board relies on *Clark v. Unemployment Compensation Board of Review*, 129 A.3d 1272, 1278 (Pa. Cmwlth. 2015), for the

---

[9]The Board notes that:

> [t]he minimum criteria for qualification to become an arbitrator in Philadelphia includes: (1) membership [in] the Bar of the Supreme Court of Pennsylvania; (2) active practice of law for a minimum of one year subsequent to admission to the Bar; (3) maintenance of a principal office in Philadelphia County; (4) trial of a case in any forum in [Pennsylvania]; and (5) attendance [at] a court approved arbitration seminar that indicates that it serves the purpose of allowing an individual to sit as an arbitrator."

Resp't's Br. at 6.

9

proposition that "in concluding whether an employment relationship exists, no single factor is controlling; therefore, the ultimate conclusion must be based on the totality of the circumstances." Resp't's Br. at 7.

Citing *Stauffer v. Unemployment Compensation Board of Review*, 74 A.3d 398, 404-05 (Pa. Cmwlth. 2013), the Board points out that:

> [t]o determine whether a claimant was free from control or direction in performing her work, this Court must examine whether the purported employer (1) paid to the claimant a fixed rate of pay; (2) withheld taxes from the claimant's pay; (3) supplied the tools or equipment necessary to perform the work; (4) provided on-the-job training; (5) set the time and location for work or meetings; (6) had the right to monitor the claimant's work and review performance; and (7) permitted the claimant to refuse assignments.

Resp't's Br. at 8.

To prove that Claimant was free from direction and control, the Board maintains that both purported employers, i.e., PAC and DCAC, paid Claimant a fixed rate of pay (by the day, rather than by the hour) and allowed Claimant to refuse assignments, and neither purported employer withheld taxes from Claimant's pay or provided her with on-the-job training. *Id*. The Board acknowledges that Claimant points to other factors to support a conclusion that is opposite to the one it reached but counters that "because each case is fact specific, all factors need not be present to determine the type of relationship that exists." Resp't's Br. at 9 (citing *Quality Care Options v. Unemployment Comp. Bd. of Review,* 57 A.3d 655, 660 (Pa. Cmwlth. 2012)). The Board argues that the training Claimant received was provided via CLE courses and was required by local court rules, not by the arbitration centers

10

themselves and that "[j]ust because someone from the purported employers [PAC and DCAC] happened to teach the CLE classes sponsored by a bar association . . . does not turn Claimant into an employee when her name was [submitted to them to be added to their list] . . . ." Resp't's Br. at 9. Citing *C E Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1169 (Pa. Cmwlth. 2008), the Board states "'[c]ontrol' for purposes of Section 4(*l*)(2)(B) of the Law is not a matter of approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment." Resp't's Br. at 9. The Board notes that Claimant testified at her hearing before the UC referee, that she had "looked into how I could become an Arbitrator after [an attorney] told me that he was one, and I heard about the CLE class and I signed up and paid for it, and then I attended the class." C.R., Item No. 12, Notes of Testimony (N.T.) 11, Resp't's Br. at 9-10. The Board adds that "[c]ontrary to Claimant's argument . . . it is relevant that she paid for the CLE . . . . It evidences her choice to become an arbitrator, not a benefit paid for by the [p]urported [e]mployers." Resp't's Br. at 10, n.5. The Board argues that, "[t]hough the [p]urported [e]mployers may have provided some tools and equipment and requested the final work product of competent arbitrations, they did not control the means of accomplishment." Resp't's Br. at 12.

The Board contends that Claimant, here, is "a professional, i.e., an arbitrator, for which specific qualifications are required," including possession of a law license and arbitration-specific training. Resp't's Br. at 13-14. The Board maintains that Claimant was capable of performing her activities for others and that the nature of her business did not, and has not, required her to look to only one employer for the continuation of her services, as PAC and DCAC are separate

entities/purported employers. "Thus, she is customarily engaged in an independent profession within the meaning of Section 4(*l*)(2)(B)." Resp't's Br. at 14.

The Board concluded that, while Claimant earned 14 credit weeks for employment during her base year of 2018, her remuneration from the services she performed as an arbitrator did not qualify as covered wages. Thus, Claimant did not meet the threshold of 18 credit weeks to be financially eligible for UC benefits. Resp't's Br. at 14-15.

Upon review, we affirm the Board. Although we acknowledge there are multiple factors to be considered in determining whether someone is engaged in work as an employee or, alternatively, is self-employed, we also recognize that no single factor is, in and of itself, dispositive. Each case presents its own unique set of facts and must be analyzed on its own. This Court has recognized an individual's independence when "one undertakes an activity in an entrepreneurial spirit with all intentions of starting a new business, trade, profession or occupation." *Buchanan v. Unemployment Comp. Bd. of Review*, 581 A.2d 1005, 1008 (Pa. Cmwlth.1990).

In the case *sub judice*, Claimant obtained and maintained her own law license, obtained and paid for her own training to become an arbitrator, was paid by PAC and DCAC on a daily basis, rather than on an hourly basis, and paid her own taxes on the remuneration she received for her services as an arbitrator. In addition, Claimant had latitude in the performance of her duties as an arbitrator, did not rely

12

on just one of the two purported employers (i.e., PAC or DCAC)[10] for her arbitration opportunities, and was, and is, free to pursue arbitration opportunities elsewhere. Claimant offers her services as an arbitrator directly to her clients/customers, i.e., PAC and DCAC, as evidenced by her testimony that she sometimes calls the centers directly to inquire about work availability (C.R., Item No. 12, N.T., June 26, 2019). Claimant has developed a years-long relationship with each arbitration center, providing services to DCAC for approximately five years and services to PAC for seven years.

Claimant's reliance on this Court's opinion in *Silver* is misplaced. In *Silver*, we noted that "the question of whether one is self-employed *after* becoming separated from an employer and is, therefore, ineligible for benefits under Section 402(h) of the Law, *is different from* the question of whether or not the individual was an employee." *Silver*, 34 A.3d at 899 n.8 (citing *Krum v. Unemployment Comp. Bd. of Review*, 689 A.2d 330 (Pa. Cmwlth. 1997)). Here, the Board determined Claimant was ineligible under section 402(c) of the Law because she did not meet her minimum credit weeks. She was not, as the claimant in *Silver*, a person who was already receiving unemployment compensation who later occasionally accepted intermittent work.

Further, we note our Supreme Court's recent opinion in *A Special Touch v. Department of Labor and Industry, Office of Unemployment Compensation*

---

[10] Of note here is the point made by the Board that "Claimant was capable of performing her activities for others and that the nature of her business did not require her to look to only one employer for the continuation of her services, as PAC and DCAC are separate entities/purported employers." Resp't's Br. at 14.

13

*Tax Services*, _ A.3d _, (Pa., No. 30 MAP 2019, filed April 22, 2020), held that the "phrase 'customarily engaged' as used in Section 4(*l*)(2)(B) of the Law requires that an individual actually be involved as opposed to merely having the ability to be involved, in an independently established trade, occupation, profession, or business." Slip. Op. at 26. However, we do not believe *A Special Touch* has any bearing on the outcome of the present matter, as Claimant was actually involved in the independently established occupation, profession, and business of serving as an arbitrator for two separate entities.

Claimant's relationship with her clients, and the steps she has taken independently to become an arbitrator are, among a litany of other factors, indicia of self-employment in an established trade, occupation, profession or business. Thus, there is substantial evidence to support the Board's determination that Claimant is self-employed and that her work as an arbitrator did not count toward her credit weeks to make her eligible for UC benefits. Accordingly, we discern no error in the Board's application of the law to the facts in the case, and we affirm the Board's order.

_____
J. ANDREW CROMPTON, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah Silver,      :
     Petitioner  :
           :
   v.       : No. 1206 C.D. 2019
           :
Unemployment Compensation :
Board of Review,     :
     Respondent :

# **O R D E R**

   **AND NOW**, this 7th day of July 2020, the Order of the Unemployment Compensation Board of Review is **AFFIRMED**.

              _____
              J. ANDREW CROMPTON, Judge